I'll give some guidance for the argument in this next case. The panel has concluded that you have sufficiently briefed all the issues except for the one on jurisdiction. I'm not saying it's insufficiently briefed, but what we want to hear from you is on the jurisdictional argument, because if you can't get past that, the rest of the issues don't matter. So, we're satisfied that both sides have covered the other issues. So, please limit your argument to the question of jurisdiction. Mr. Schaeffer. Yes, Your Honor. Good morning. May it please the Court. My name is Mark Schaeffer. I'm here with my colleagues, Michael Farrell and Maric Oscar Gonzalez, and we represent the appellants here. And with the Court's guidance, I will jump directly to the jurisdictional arguments. I would just highlight a few, with the Court's permission, just factors that I think are instructive and guide my arguments with respect to jurisdiction. This was a case where it was a 19-family complaint filed in the state court, pursuant to the West Virginia Rules of Civil Procedure 3A that were amended in 2008. They were separately docketed, separate civil action numbers. These folks were from 15 different states. There was one plaintiff, family from New York, and there were no allegations as to that family having anything to do with West Virginia. The cases were removed, pursuant to 18 separate civil action numbers. They were docketed separately here. The New York plaintiff was not removed. There was a remand determination by the Court finding that the citizenship of the New York non-removed plaintiff and not party to any of the civil actions essentially destroyed diversity, and the Court also rejected our fraudulent misjoined argument. So that's the starting point for the Court. We believe that the Court has appellate jurisdiction based on the conceptual antecedent doctrine that has been recognized by this Court, as well as the Supreme Court's holding and analysis in the Thermotron determination, Thermotron decision. And essentially, we believe that to be the case because what the Court did was error in determining to include the non-removed New York plaintiff's citizenship in order to destroy diversity. And as a result, we think that the Court has jurisdiction, just straightforward subject matter jurisdiction, on the face of the removal petitions because if you look at each of the 18 removed cases, you have complete diversity on either side. Well, do you agree that this case falls within the ambit of Section 1447C? I think no, Your Honor. I think that really with the Thermotron decision, I think the most applicable analysis is really this Court's analysis in the Barniman case. And basically, in the Barniman case, the Court held that even if a remand decision purports to be based on 1447C, lack of subject matter jurisdiction, Thermotron permits review of remand decisions premised on a conceptually antecedent ruling. And what happened in Barniman was there was an assault claim against a postal worker. And the United States government removed that case and did two things. They said we could substitute ourselves for the postal worker, and we also believe that the alleged assault allegations were within the scope of employment of the employee. And the District Court rejected both of those arguments and remanded, basically saying substitution was improper and also finding that the alleged assault was not within the scope of employment. Those were conceptual antecedent determinations. And what this Court then said was because those were conceptual antecedent determinations, the scope issue and the substitution issue, it was fully reviewable. And again, what this Court held was that if the antecedent components of the District Court's remand order are reviewable, it follows that the remand order itself should become reviewable because its propriety depends on premises that are not statutorily barred from review rather than on whether the federal jurisdiction requirements in 1447 are satisfied. So basically, our argument is this, is that we understand completely that appellate review of remand decisions is very narrow. And we understand that the District Court has very broad discretion in determining remand. However, what the District Court cannot do is limit the statutory right of a defendant here, two defendants and Greenstones, to a federal forum. It cannot make a conceptual antecedent determination. Here, that determination was that this non-removed, non-party to any of the civil action, both below and above, somehow can be included and joined in each of those separate actions to destroy diversity. So it's essentially the flip side of this Court's determination on Barniman. So I think that, and I would also highlight the Ellensburg decision. Because in Ellensburg, what the District Court had done was to, as this Court found, place a heightened burden on the defendants to show some kind of factual determination with respect to the amount and controversy. And what this Court said was that because the imposition of that requirement was erroneous, the remand order based on that requirement was reviewable. Again, a conceptual antecedent determination, exactly what happened before this Court. And I think that to the extent that the plaintiffs have argued and that our entire jurisdictional focus is based on the Waco exception, we would say two things. One is, it's not. We are not raising Waco as the basis for our jurisdiction here. The Waco exception involves appellate review of final and collateral issues within a remand order that are severable from the remand order itself. So that's not what we're alleging. We're basically saying, as a result of ThermTron, as a result of this Court's determinations in the Barniman case and in the Ellensburg case, is that the District Court exceeded its jurisdiction by looking beyond the plain face of the complaint. And we believe we know that the District Court erred, or we would respectfully submit that the District Court erred, based on the 2008 West Virginia amendments to Rule 3A, which I think are instructive. They're based on a recommendation from the West Virginia Mass Litigation Panel. And it required three separate things. That a case be signed, a separate civil action number, that they be docketed separately, and that they be charged a separate fee. Now, my adversaries have argued that this was all a fee aspect. And we would submit that certainly a component of this has to do with fees. But certainly, there would be no reason to have separate docketing and separate civil action numbers if the entire focus of this amendment was simply to raise funds. So at the time of the filing, at the time of removal, which is, as the Court is aware, is the operative time for both the District Court's analysis and this Court's analysis, we had 18 civil actions with one plaintiff family from a particular state and complete diversity on the other side. That's straightforward, vanilla, subject matter jurisdiction. It was only the District Courts, essentially, in our view, going beyond its jurisdictional mandate to make a conceptual antecedent determination that in order to do that analysis of whether there's straight subject matter jurisdiction, we need to look at the citizenship of this non-party that was left in state court. And again, it's instructive when the Court does look at, you know, really what's going on here. We have 19 separate families, only one from New York with no connection whatsoever to this litigation, 15 different states, as well as one West Virginia plaintiff all being brought in a same complaint. I would highlight also, Your Honors, the Atkins case. I will tell you it's a case from a few weeks ago, and we actually just found it yesterday, I think, submitted it to the Court as supplemental authority. But it's a case from April 8th from the Southern District of West Virginia. And in that case, the plaintiffs were the one arguing, wait a minute, you can't lump all these cases together. It was a multi-plaintiff complaint. The defendants removed the case and argued in terms of meeting the amount and controversy requirement, you have to look at the constellation of claims. And the plaintiffs there argued, no, no, no. These are separate actions. You only have to look at them separately. And the district court in that case, that was Judge Copenhaver, agreed and said, yes, that's what Rule 3A of the West Virginia Civil Rules of Procedure say, is that these are separate civil action numbers, separate cases, and accordingly the remand was appropriate. Well, even assuming that we agree with you on the Rule 3 issue, how do you get beyond Thermotron, which counsels us that we are precluded from reviewing such an order, whether or not that order might be deemed erroneous by us? Well, again, I think that is exactly what happened in Barniman. So what I think Thermotron, what this Court said in Barniman, and what the Court said in Ellensburg is, ultimately a determination, a district court has to say, I don't think I have jurisdiction. But if that just black letter statement was enough to avoid jurisdiction, you wouldn't have the Thermotron decision, nor would you have Barniman, nor would you have Ellensburg. And I think what the courts have said, and what the Supreme Court said there is, if the statute requires and gives defendants an ability to have a federal forum, and it's prescribed as to what a district court can and can't do in order to determine whether federal jurisdiction is appropriate. And when the district court goes beyond what its jurisdictional purview is, in order to make a determination. So again, quite simply, what the district court, in our view, really the only thing that was before the court is, we have a removal petition. On the one hand, we have a plaintiff from, you know, Wisconsin. And on the other, filed in West Virginia State Court. And the other, we have defendants from New York and New Jersey. There's complete diversity. Based on that, it should have been, in our view, an easy call. But on the master complaint, the New York plaintiff shows up on there. And because West Virginia has this weird approach to handling a consolidated complaint being filed, and therefore we separate it out, and so each has to pay a fine, I can understand that for economic reasons. But why shouldn't the judge be able to look? This was the entire case, including the New York. Well, I would say two things, Your Honor. One is, you know, I think we have the Abbott case that was cited by, first of all, we have Judge Copenhager's decision that these are separate. Second, we have the Abbott case from the litigation panel, which basically has a determination of a pre-amendment case where there was 99 families in a complaint. And they analyze it, and they say, well, because there's only one complaint, we have to look at these separately. But they say, if this had been filed post-2008, then this would have been 99 separate civil action numbers. So the fact, you know, plaintiffs make much of the argument of Rule 20, join during filing complaints, and I think it should be up to a court to determine whether these are properly joined. It should not be the artifice of a plaintiff just being able to put a bunch of plaintiffs in a complaint. And I think that— Doesn't that underscore the point as to why remand orders should not be reviewable by us? Because it was up to the judge, and Judge Chambers decided one way in this case. Judge Copenhager decided on different facts a different way on jurisdiction. And that's their prerogative. I'm sorry, Your Honor. I think that, as I said earlier, we're not looking for an expansive view of remand. I think this is a very unusual and unique situation. I think in the normal course, I would say, you're right, Your Honor. I think the really distinction here is this is Barniman. This is the flip side. There, the district court determined that the substitution of the United States was improper, and that became subject to this court's review. And here we have a situation where the court has made a determination, a conceptual antecedent determination, that in order to consider this, I have to consider this other party and bring it in. That's the type of determination that is beyond the jurisdiction of the district court and is reviewable. I would also just, with the court's permission— Also, we've made a fraudulent misjoinder argument here as well that I think has applicability. And in order for the court to make its determination, it found that all of these claims arose out of the same transaction or occurrence. We've cited a host of cases, particularly in the mass tort pharmaceutical arena, showing that when you have different companies, different plaintiffs, different prescribing physicians, different injuries, even the plaintiff's own complaint, now it's intentionally vague to avoid some of these issues. But they talk about science from 1996 to 2010. They talk about a host of different injuries. They talk about different conduct, different prescribing physicians. All of those lead to the fraudulent misjoinder and support fraudulent misjoinder in this case. So with that, I see my time is almost up. I have reserved some time. I'd be happy to answer any questions from the court or reserve the rest of my time for rebuttal. Thank you, sir. Thank you, Your Honor. Mr. Magistro. Justice O'Connor, Judge Floyd, Judge Thacker, may it please the court. My name is Anthony Magistro, and I'm here on behalf of 19 injured children and their parents who filed a lawsuit in state court in West Virginia. I think I want to start out with reframing the issue in this case, because we heard a whole lot about whether or not Rule 3 applies and whether it's one case or two and whether the fraudulent misjoinder doctrine should apply. But with all due respect to my counsel on the other side, that misses the point. The question is not whether these are really 18 separate cases. The question is whether Judge Chamber's decision that they are one case is a jurisdictional decision. And if it is a jurisdictional jurisdiction, that this court under 28 U.S.C. 1447D is barred from reviewing that decision. It's as simple as that. Now, Judge Floyd, you asked whether or not this was a 1446 remand. And it's clear looking at Judge Chamber's decision, it is. He looks at the case, says we have plaintiffs on one side who are from the state of New York. We have a defendant on this other side of the state of New York. There is no jurisdiction. I'm remanding this case. Broken down to its simplest facts, it is clear that Judge Chamber's believed, correctly or incorrectly, that there was no jurisdiction and the removal of this case was barred. Now, from there, there are some exceptions to 1447D. This court's recognized three. Two of them are the thermitron grounds that the court's not remanding based on a 1446 ground or that it's exceeded its jurisdiction. The middle ground, the second ground, is the Waco collateral order doctrine. What the defendants have done in this case is pick and choose in between the three of those doctrines. He conceded that he's not conceding under the Waco doctrine. Of course he conceded that because he can't meet the requirements. The problem is that this court in Blackwater talked about this conceptual antecedent doctrine that he describes. If you look at the conceptual antecedent doctrine, it starts with this court's decision in In Re CSX in 1998. That's where it first mentions the doctrine. That case, it was an admiralty case. The court found that the determination that the plaintiff's claim in that case did not fall within the admiralty statutes was a conceptually antecedent decision and therefore that decision could be reviewed. Now unlike the decision in this case, that was a substantive decision that's separate from the review. Exactly what the test is under Waco. In 2000, this court decided Borneman. And Borneman was a question of whether or not under the Westfall Act, the federal employee was acting in the scope and course of his employment. Another substantive decision that's severable from the underlying remand. Now in Blackwater in 2006, this court looked at Shives and explicitly said, this is the Waco exception. There is no independent conceptual antecedent exception apart from Waco. Supreme Court has emphasized that over and over again, most recently in the Power X case. In the Power X case, which I believe is 2008, Justice Scalia writes, for some members of the court, the conclusion that the district court purported to remand for lack of subject matter jurisdiction is alone enough to bar review. That's the end of the story. There's no question that's what happened here. Under Justice Scalia's version of the law, the plain language of the statute, review is barred. But he goes on to say that that's a case that's an issue that's not been decided by the U.S. Supreme Court. But what has been decided is that if it's plausible that the court's relying on jurisdiction, then you can't meet Thermotron. That's what they say in Power X. I'll read from Justice Scalia's opinion. Lengthy appellate disputes about whether an arguable jurisdictional ground invoked by the district court was properly such would frustrate the purpose of Section 1447D quite as much as determining whether fact-finding underlying the invocation was correct. Both Power X and the case that came a couple years before that, Kirshner, they said you can't split up these orders and attempt to appeal the factors that are really encompassed in the underlying remand decision. Let's talk about for a minute the consequences if you buy the defendant's argument. First of all, let's take their Adkins case. That case is now appealable. One, Judge Copenhaver decided. It's ironic they're relying on a case where the district court remanded the case. But under his interpretation, Judge Copenhaver's decision that Rule 3A caused the and it's arguable whether the court even decided that. It was pretty much conceded by the parties. But that decision now is appealable. Let's talk about a lot of the other standard things that happen in remands. Deciding whether a defendant's fraudulently joined. That sounds like a conceptually antecedent decision. It's determinative of the remand, and under their argument, that would be appealable. Deciding that a claim is preempted by federal law. Another conceptually antecedent decision would be appealable. Deciding that a defendant was served on day one versus day ten regarding whether or not removal would be timely. We can get into that level. Deciding that a party is a citizen of one state versus the other. Maybe I sue Judge Thacker and claim that diversity exists because I argue she's a resident of Virginia, not West Virginia. The court's determination of that question, which is jurisdictional then, is conceptually antecedent to the decision to remand the case. All of those would be appealable. This morning, after I woke up, I thought to check, and I looked on Westlaw. We have 17 remand decisions by the district courts in this circuit since April 1. These defendants in these cases remove lots of things. Atkins is another example of what happens. You get a defendant who doesn't want to be in state court. They remove a case where the facts of the case show that the plaintiffs were claiming about $35,000 damages each. Everything gets removed out of our courts. If you adopt their argument, not only are our district courts going to have to deal with all these remand decisions, you're going to have to deal with them on appeal. That's not what Congress meant when it passed 1447D. That's not what the Supreme Court meant when it created the exceptions to that. I want to talk a little bit about Bonneman because he relies principally on that. In Bonneman, again, that was a Westfall act. It was the person acting within the scope of his employment. It's easy to see how that meets Waco. It's a substantive ruling that's severable from the merits. But I think what's important to look at is what the U.S. Supreme Court did with the same issue in Osborne v. Haley in 2007. Now, we're not saying that this court was relying on Osborne seven years later when it decided the case seven years before. But what the Supreme Court said in Osborne when it allowed an appeal of a remand under one of these situations where the issue was whether the federal employee was acting in the course of his employment, they emphasized the limited nature. What the court said is, our decision, the section 2679D2, leaves the district court without authority to send a certified case back to state court scarcely means that whenever the district court misconstrues a jurisdictional statute, appellate review of the remand is in order. Such an exception would, of course, collide head-on with section 1447D. Only in the extraordinary case in which Congress has ordered the intercourt shuttle to travel just one way from state to federal court does today's decision hold sway. So in Osborne, however broadly you may want to try to read Borneman, Osborne precludes you from reading it as broadly as the defendants are seeking to in this case. And if you go back to what the Westfall Act says, it says once the Attorney General certifies it, that's conclusive. There is no such preclusive statute in this case. The decision of who is a party in the case is the kind of jurisdictional call that a district court has to make all the time in determining who the parties are and whether or not to remand. They also rely on Ellenberg. Ellenberg is also distinguishable. First, I think Ellenberg is inconsistent with Power-X and Kirchner, the U.S. Supreme Court cases, but it does come after them. It doesn't really discuss them, but if you look at the cases side by side, Power-X and Kirchner provide strong grounds not to expansively interpret Ellenberg. But in Ellenberg, the court said it was a straight-on bermatron case. The district court in Ellenberg made its own motion to remand based on a procedural defect. The statute says a procedural defect is waived if it's not timely made by the defendant. So what the court in Ellenberg essentially said, and I have the language about it being conceptually antecedent, I guess it is antecedent if that is true, but it is also a ground not allowed under 1447C. That's what Ellenberg stands for. To the extent that it tries to discuss this conceptually antecedent test, we would contend that you have to go back to Blackwater, which is this court's only description of the requirements of the conceptually antecedent test, which preceded Ellenberg and has never been overruled. And in that case, the court explicitly held that this conceptually antecedent test is the Waco test, which requires it to be separate from the remand order and that it be of substantive rights, both of which fail on the facts of this case. I know the court started out saying that you just want to hear about jurisdiction. We heard a lot from the other side on the merits, and with the court's indulgence I would like to make a couple of very brief points. One is with respect to the conflict between Rule 3A and Rule 20. We read Rule 3A when it says docketed as separate civil actions to mean it doesn't say creates separate civil actions. It doesn't bar the filing of these claims. When it says docketed as if they are separate civil actions, not that they are separate civil actions. But you're saying it's just a fee-raising mechanism. I'm sorry? You're saying it's just a fee-raising mechanism. Exactly. If you look at the history, the clerks don't like these mass litigation cases. They don't like a lot of it. The circuit clerks don't. And they complained. They were collecting one fee. We were having asbestos complaints that were filed with 100 plaintiffs in them. And they said if we're going to do this work, we need more money to do it. And the reason they have separate docket numbers administratively allows them to track who's paid the fee and the filings in each case. It's an administrative function. Just like this court ended an order in this case saying file everything in the lead case. But why should we look at all this history of Rule 3A that you're talking about when the plain language of Rule 3A now says they shall be assigned separate civil action numbers and be docketed as separate civil actions? Yes. Docketed as what it says, docketed as a separate civil action number. As a separate civil action. And as a separate civil action, to us that means is docketed like it's a separate civil action, not that it becomes a separate civil action. And the reason you know that is what they intended is because they didn't change Rule 20. Rule 20 explicitly allows, and the doctrine is that you read the rules together. Rule 20 says all persons may join in one action as plaintiffs. It says all persons, not all related persons. It says they ought to join in one action as plaintiffs. Well, the judges of the mass litigation panel in West Virginia disagree with you as did Judge Copenhaver in the Adkins case. You know, I think neither of those cases was this issue extensively litigated. And you know, in this case also, Judge Chambers and Judge Young, Judge Young who's the circuit judge in this case and Judge Chambers who was the district court judge, agree with me. I give you there's grounds for some dispute. Well, the mass litigation panel, the judges of that court in West Virginia who are the most familiar with mass litigation in state courts there, said in the Abbott case that had the Abbott case been initiated after Rule 3A was amended, there would be 99 separate civil actions pending instead of just one. And I don't believe anybody made the arguments that we're making here today looking at the rules in their entirety with Rule 20, which their argument is that you should have to go to court to join the claims together. That's inconsistent with Rule 17, which says I file a complaint that has multiple counts. It says I can join any claims that I have. It says I can join them. I don't file a motion to say I want to join Count 1, Count 2, Count 3. Rule 20 says I can join any person. All persons can join together. You don't have to file the motion to join. Rule 21 provides the remedy, and that's their motion to sever. And a lot of this, I think, Your Honor, is a question of who decides whether this joinder is proper and when is it decided. I mean, there's a remedy to them if they think these claims are misjoined, and that's to file the Rule 21 motion to sever back in state court. You know, I want to point out a couple things about Judge Copenhaver's decision. One of the differences between this case and the Atkins v. Appalachian Fuels case is that in this case we filed a complaint and we said we are joining these claims together as one claim. The intent is very clear in the complaint. It's pled in the complaint itself, a jurisdictional statement that the joinder is proper. On Appalachian Fuels, the plaintiffs filed their complaint and then stated to the court, we don't intend these claims to be one case. So they pled the case differently, intended the case differently, which leads to a different result. And then as I pointed out before, the defendant never contested, really contested, the plaintiff's claim that they were separate cases. And finally, the issue in that case is whether or not the plaintiff's damages were sufficient to meet the jurisdictional minimum. Well, it really doesn't matter whether it's one case or 10 or 20 or 100 with respect to meeting the jurisdictional minimum because the precedent is clear, you can't aggregate, other than under the Class Action Fairness Act, you can't aggregate claims to meet the jurisdictional minimum. Even if the result would have been the same in that case, even if it had been one complaint. Because each individual plaintiff would have to meet the jurisdictional minimum to be able to proceed in federal court. You know, I think I want to conclude, if there aren't any other questions, with respect to the fraudulent misjoinder argument, we'll stand on our cases. It's a highly disputed case, issue of law, only been accepted by one circuit court. We believe the district courts that have ruled the other way on that issue got it right. I mean, it's complicated enough to decide whether defendants are fraudulently joined. We start adding whether plaintiffs are, we just add another level of complexity that we don't believe Congress ever intended. And the reason I think we know Congress didn't intend this is we look at the recent statutory amendments. Congress has, a couple years ago, expanded jurisdiction. Now the defendants respond in their reply brief, well, that didn't touch these areas, so we can't say Congress explicitly rejected it. But I started thinking about that after I read their reply. There was one area where Congress did explicitly reject the arguments they're making here, and that's CAFA, the Class Action Fairness Act. The Class Action Fairness Act contains a provision that says if you've got 100 plaintiffs in mass litigation, you can remove that case if you have minimal diversity. Now that was highly argued, litigated, it was filibustered forever, and they finally get to that point where they passed it with that 100-person limit. CAFA did something else. When it applies in remand issues, Congress authorized an appeal of that remand decision, explicitly authorized that appeal. We would contend they are trying to judicially expand CAFA to these situations where we have 20 people or something less than 100. We believe Congress drew the line in this case very clearly, and they created an exception to 1447D, they created an exception to complete diversity, but to get there you have to have 100 people in a case. We believe that this court, the precedent of the Supreme Court in this court established there's no appellate jurisdiction in this case, and Congress's actions and explicit rejection of the idea that every mass tort claimant has to be in federal court ought to be given respect to this. Finally, make two points. The whole tenor of the defendant's arguments in this case is somehow state courts aren't competent to resolve these claims. We trust the West Virginia court system, the West Virginia Supreme Court of Appeals, those courts, we have good, smart circuit judges who understand how to do these, we have a mass litigation panel set up if these cases get too big, the defendants can actually move to send it there. That court is competent to resolve this. And the final point I would make is this isn't a question of whether if they're right the New York case goes to New York and the Kentucky case goes to Kentucky and the West Virginia case stays in West Virginia. Their argument's not that these cases ought not to be considered altogether. Their argument is that it ought to go to the MDL and be removable and go to the MDL where it will be lumped in with hundreds and hundreds of other cases. That's what my clients are seeking to avoid, the bureaucracy and the procedure that's intended in that. Congress gave them removable ability when it got to 100. This case doesn't fall within that jurisdiction of removal jurisdiction. Thank you, Mr. Magistro. Mr. Schaffo. Thank you, Your Honors. At some level, this is a very procedural, technical argument. And I think that's fair on both sides. But I would be remiss if I didn't really focus on the main reason why we're here today. This is a critically important issue for not just Pfizer and Green Snow, my clients, but others. This is a deprivation of their narrow and limited right for federal jurisdiction. They're seeking a federal forum. And you basically just heard at least one of the reasons is to basically try and avoid MDLs. This is a tactical motivation in order to try and deprive our clients of a federal forum. Now, we don't agree with the Supreme Court cases that counsel has cited that this court cannot review remand orders. I mean, were that the case, there would be no Thermotron decision, there would be no Barnum indecision, there would be no Ellenberg decision by its face. And basically, as we said in our briefs and as I will just reiterate, is when, in a very narrow, limited circumstance, when a district court, notwithstanding beliefs or good intentions, but when a district court exceeds his or her judicial authority with respect to the jurisdictional scope of review, that, in those narrow situations, are reviewable. And that's exactly what this case is. Now, again, you've heard a lot about Waco. I will only say it one more time. None of the cases that we've relied on are Waco. In fact, the Thermotron, Barnum, and Ellenberg analysis precede the Waco analysis. You only get to Waco, essentially, after you've exhausted and determined that those arguments do not apply. You know, just to address a few of the points, well, why didn't we sever? Again, that kind of begs the question. In our view, these cases were always separate. I mean, if you just look at the plain language, both of Rule 3A and the removal statute, it talks of any civil action, removing any civil action. All civil actions. The folks in West Virginia who revised this, you know, had to have an understanding of, you know, we believe and we know, that they use the term civil action. It means something. And when they basically say that there's separate civil action numbers, it's fully coordinate with the removal statutes here. And we also know one other thing, that if they were right that this was all part of one complaint and one action, we know that after the case was remanded, and notwithstanding our view that the trial court in West Virginia has no jurisdiction, what did he do? He issued an order consolidating all of these cases. Why would that be if these were just one, you know, revenue-raising, generating-type procedures? So, you know, I think, at best, counsel's argument about 3A is quite strained. We also think that the Parade of Horribles argument, which essentially if you do this, you know, every single remand, you know, decision is going to be for the court. I think the court should, you know, be mindful of our, you know, our position and our statements here that, admittedly, this is a very narrow issue that we're raising before the court. We should not be denied our relief based on some arguments that, you know, if we do this, 15 other things are going to happen or every decision. This is a narrow issue, and I think the court can address this. And, frankly, both the issue of the jurisdiction here and the fraudulent enjoinder are very important issues. Very few circuit courts have addressed this. It would provide very helpful guidance, both for plaintiffs, defendants, and the court, were this court to also address the fraudulent enjoinder argument. So, you know, I would end by reiterating that just our position that here in the narrow situation where a court makes a determination that is outside the plain complaint before him or her, the notice of removal, in order to include, in 19 cases, or in 18 cases, a non-party New York plaintiff, that is a conceptual antecedent decision, just as it was in Barniman, and this court, we believe, fully has jurisdiction. Thank you, Your Honor. Thank you, Mr. Chaffoe. I ask the clerk to adjourn the court, and we'll come back.
judges: Sandra Day O'Connor, Henry F. Floyd, Stephanie D. Thacker